UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JOHN BAUER, *et al.*,              :    Case No. 3:09-cv-194

     Plaintiffs,              :    Judge Timothy S. Black

vs.                              :

SUKHVINDER SINGH, *et al.*,        :

     Defendants.              :

**DECISION AND ENTRY: (1) DENYING PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT, IN PART, AND GRANTING IT IN PART (Doc. 41);
AND (2) DENYING DEFENDANTS' MOTION TO STRIKE (Doc. 45)**

This civil case is presently before the Court on Plaintiffs' Motion for Summary

Judgment (Doc. 41) and Defendants' Motion to Strike certain exhibits submitted in

support of Plaintiffs' Motion for Summary Judgment (Doc. 45).  Defendant filed a

Response to Plaintiff's Motion for Summary Judgment (Doc. 43), and Plaintiffs filed a

Reply (Doc. 46).  Plaintiffs filed a Response to Defendants' Motion to Strike (Doc. 47)

and Defendants filed a Reply (Doc 49).  Both Motions are now ripe for decision.

**I. THE PARTIES AND CLAIMS**

Initially, two named Plaintiffs, John Bauer and Jerry Freeze, filed this action as a

putative collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 210,

*et seq*.  (Doc. 35).  The Court approved conditional certification of a collective action after

Defendants presented no opposition to Plaintiffs' proposed Notice to opt-in Plaintiffs.

(Doc. 11).  Thereafter, Mark Wilson, Dustin Cassidy, James Dozier, and Hubert Palmer all

executed Consent to Sue forms and filed them with the Court.  (Docs. 17, 18, 19, 20).

Following the discovery deadline, the opt-in Plaintiffs sought to join the action formally as named Plaintiffs. (Doc. 40). Defendants asserted no objection to joinder of the opt-in Plaintiffs, and the Court ordered them joined as named Plaintiffs. (Doc. 42).

Plaintiffs assert their claims against their respective former employers, Payless Auto Sales, LLC, Commercial Paper Co., LLC, and Payless Auto Salvage, LLC (hereinafter collectively referred to as "the LLC Defendants"). (Doc. 35). Plaintiffs also name Sukhvinder Singh, an individual, as a Defendant. (*Id*.) Plaintiffs allege that Defendants violated the FLSA by failing to pay overtime wages and minimum wage. (*Id*.) Plaintiffs also assert claims for FSLA retaliation, wage conversion, and claims under Ohio Revised Code ("O.R.C.") § 4111.09. (*Id*.)

Payless Auto Sales is in the business of used car sales and is located on South Erie Highway, Middletown, Ohio. (Doc. 43-1). Commercial Paper is in the business of purchasing automobiles for sale at Payless Auto Sales and in financing the automobiles purchased from Payless Auto Sales. (*Id*.) Commercial Paper operates its business at a facility on South Erie Highway, Hamilton, Ohio. (*Id*.) Payless Auto Salvage is engaged in the business of selling used automobile parts to local repair shops and individuals. (*Id*.) Payless Auto Salvage operates its business on Oxford Road, Middletown, Ohio. (*Id*.) Sukhvinder Singh is the general manager of the LLC Defendants. (Doc. 43-1).

The original Complaint and the Amended Complaint also reference Paul's Auto Sales and Rajvinder Singh. (Docs. 1, 35). Paul's Auto Sales and Rajvinder Singh are also referenced in the memoranda presently before the Court. Like Payless Auto Sales, Paul's

-2-

Auto Sales is in the business of used car sales, and is located on South Erie Highway, Hamilton, Ohio. (Doc. 43-1). Rajvinder Singh is the general manager of Paul's Auto Sales along with Sukhvinder Singh. (*Id.*)

Neither Paul's Auto Sales nor Rajvinder Singh are listed as named Defendants in the caption of either the Original Complaint or the Amended Complaint, as required by Fed. R. Civ. P. 10(a). (Docs. 1, 35). Further, a review of the docket reveals no issuance of summons or express waiver of service of process for Paul's Auto Sales or Rajvinder Singh. Under Fed. R. Civ. P 10(a), "[t]he title of the complaint must name all the parties[.]" Courts have concluded that "a party that is not named in the caption of an amended complaint is not a party to the action." *Jones v. Parmley*, No. 5:98-CV-374 FJS/GHL, 2005 WL 928666 (N.D.N.Y Apr. 20, 2005); *Harris v. Auxilium Pharm., Inc.*, 664 F.Supp.2d 711, 722 (S.D. Tex. 2009). Accordingly, neither Paul's Auto Sales nor Rajvinder Singh have been made proper parties to this action.

## II. FACTS

### John Bauer

Plaintiff Bauer began working for Defendant Payless Auto Sales in January 2009. (Doc. 41-3). His employment ended approximately three months later in March 2009. (*Id.*) During his employment, Bauer alleges he was paid a weekly sum of $550 for all hours worked. (*Id.*) Despite being employed by Defendant Payless Auto Sales, his paychecks came from Defendant Commercial Paper. (*Id.*)

Bauer contends that throughout his employment, he consistently worked approximately 25 hours of overtime each week of his employment for which we was not paid. (*Id.*) Pay records submitted along with his affidavit reveal that in February and March 2009, Bauer worked exactly 40 hours per week and was paid $550.00. (Docs. 41-3, 41-5). However, according to Bauer, he was never required to report his hours to his employer and, in fact, there was no time-clock where he could do so at Payless Auto Sales. (Doc. 41-3).

Despite the pay records, Bauer estimates that during his approximately three months of employment with Payless Auto Sales, he worked a total of 285 hours of uncompensated overtime. (Doc. 41-3). Based on his purported pay rate of $13.75 per hour ($550 divided by 40 hours), he is entitled to recover $5,878.13 in overtime, plus liquidated damages and attorney fees.

Sukhvinder Singh testifies, via affidavit, that Bauer only worked the hours of 10:00 a.m. until 7:00 p.m.,[1] Monday through Friday, and that in working that schedule, Bauer only worked 40 hours per week. (Doc. 43-1). To corroborate the testimony of Sukhvinder Singh, Defendants also offer the affidavit of James Gist, Jr., a tow truck driver who worked for Commercial Paper at the same time that Bauer worked for Payless Auto Sales. (Doc. 43-3).

---

[1] The affidavit of Mukhtiar Singh contradicts the affidavit of Sukhvinder Singh. Sukhvinder Singh states that lots were only open from 10 a.m. until 7 p.m., but the affidavit of Mukhtiar Singh states that lots were open from 10 a.m. until 10 p.m.

According to Gist, he and Bauer performed the exact same work duties and worked the same hours. (*Id.*) Gist was also always paid for 40 hours per week, but, according to Gist, rarely did he ever work a full 40 hours in a single work week. (*Id.*) Instead, when there was no work to perform during his scheduled workday, Gist was simply free to leave. (*Id.*)

### Jerry Freeze

Jerry Freeze[2] began working for Defendant Payless Auto Salvage on or about July 5, 2008, and he continued in such employment until he was fired on or about January 3, 2009.[3] (Doc. 41). According to Defendants, Freeze was discharged for stealing auto parts. (Doc. 43-1). However, Freeze implies that he was fired for questioning Defendants' failure to pay overtime. (Doc. 41-7).

As an employee of Payless Auto Salvage, Freeze would fill parts orders from removing parts from cars in the salvage yard. (Doc. 41-7). After removing the parts, Freeze tagged the part pulled and identified which car the part was taken. (*Id.*) Freeze also drained gasoline, cut catalytic converters, removed wheels and other valuable parts from the salvage cars and secured them in the salvage yard. (*Id.*)

---

[2] Plaintiffs represent that Jerry Freeze died on July 11, 2010. (Doc. 41). As of this date, Defendant Freeze's Estate has not been made party to his case.

[3] Plaintiff Freeze's Interrogatory Responses apparently contain an error. In those responses, Freeze states that he worked for Defendants from "Mid-June, 2008 through December, 2009." (Doc. 41-7). However, Plaintiffs' Motion for Summary Judgment states that Freeze was "discharged around January 3, 2009." (Doc. 41). The Affidavit of Sukhvinder Singh affirms that Freeze was terminated on January 3, 2009. (Doc. 43-1). Pay records corroborate that Freeze worked until January 2009, *i.e.*, his termination date is noted as January 2, 2009, and his last check was issued January 7, 2009. (Doc. 41-5).

At the time his employment began, Freeze was paid $10.00 per hour, and in August 2008, his pay rate rose to $11.00 per hour. (Doc. 41-5). Freeze asserts that he worked Monday through Friday every week from 8 a.m. until 5 p.m, and then worked Saturdays each week from 8 a.m. until 12 p.m. (Doc. 41-7). Paycheck stubs submitted with Plaintiffs' Motion[4] show 11.5 hours of overtime worked at the pay rate of $10.00 per hour, and 42 hours of overtime worked at the pay rate of $11.00 per hour, for a total of $288.50 of unpaid overtime. (Docs. 41-5, 41-8). Freeze seeks this exact amount in alleged unpaid overtime. (Doc. 41).

According to Sukhvinder Singh, all persons employed as part-pullers at Payless Auto Salvage worked only during business hours, which were Monday through Friday, 8:00 a.m. until 5:00 p.m. (Doc. 43-1). Therefore, according to Sukhvinder Singh, none of the employees employed as part-pullers for Payless Auto Salvage, including Freeze, worked more than 40 hours per week. (*Id*.)

Defendants also submit the affidavit of Daniel Depue, who also worked as a part-puller for Payless Auto Salvage along with Freeze. (Doc. 43-4). According to Depue, he worked from 8:00 a.m. to 5:00 p.m., Monday through Friday, for exactly 40 hours per week. (*Id*.) Depue further testifies that the salvage yard was never open on Saturdays, but Defendants would allow employees to come to the yard on Saturdays to work on their own vehicles or projects. (*Id*.) According to Depue, Freeze worked the same hours he worked and never knew Freeze to work any overtime. (*Id*.)

---

[4] Defendants move to strike Freeze's paycheck stubs on basis that they are not authenticated pursuant to Fed. R. Evid. 901. (Doc. 45).

**Mark Wilson**

Plaintiff Wilson initially worked for Defendant Payless Salvage from July 2, 2008 until July 17, 2008, but he makes no claim with regard to this period of employment. (Doc. 41). Wilson was apparently rehired in October 2008, and he worked at Defendant's salvage yard until June 15, 2009. (Docs. 41, 41-5, 41-9).

As an employee of Payless Auto Salvage, Wilson pulled parts from disabled or junked cars to sell to customers, cleaned the salvage yard and drained gasoline from junked cars. (Doc. 41-9). Wilson also pulled catalytic converters, chrome wheels, and other valuable items from salvage cars and secured them in the salvage yard. (Doc. 41-10).

Wilson testifies, by way of affidavit, that he was paid $10.00 to $11.00 per hour in regular wages. (Doc. 41-9). Wilson further testifies that he regularly worked over 40 hours per week, that he was paid "straight time" for overtime hours, and that sometimes he was paid in cash for overtime hours worked on Saturdays. (*Id.*) According to Wilson, he received such cash payments for at least a month after Defendants became aware of this action. (Doc. 41-10).

Pay records submitted by Paychex, Inc. ("Paychex") show that Wilson worked a total of 21.5 hours of overtime at his $10.00 rate of pay, and that he worked a total of 35.75 hours of overtime at his $11.00 rate of pay. (Doc. 41-5). The pay reflected on those records reveal that Wilson was paid his regular hourly rate for those overtime hours. (*Id.*) Assuming Wilson is entitled to overtime pay under the FLSA, he was underpaid $107.50

worth of overtime pay at his $10.00 rate of pay, and $196.63 at his $11.00 rate of pay (a total of $304.13). Like Freeze, Wilson seeks this exact amount in alleged unpaid overtime.

### Dustin Cassidy

Plaintiff Cassidy also worked for Defendant Payless Salvage for approximately five months, from March 2008 until August 2008. (Doc. 41-11). According to Sukhvinder Singh, however, Cassidy only worked from June 10, 2008 until July 16, 2008, when he was fired for stealing. (Doc. 43-1). Plaintiffs do provide pay records from Paychex showing payments made to Cassidy only in June and July 2008. (Doc. 41-5).

As an employee of Payless Auto Salvage, Cassidy identified particular parts ordered by customers, found those parts on salvage vehicles on the salvage lot, pulled those parts and noted the car from which each part was pulled, and then tagged the individual part. (Doc. 41-11). Cassidy also secured catalytic converters and tire rims at the salvage yard, and he also removed gasoline from salvage vehicles. (*Id.*)

According to Cassidy, he estimates he worked 46.5 hours per week, but provides no testimony regarding his hourly rate of pay. (Doc. 41-11). Instead, Cassidy states that he was paid a set rate of $350 per week, and $50 was deducted from his pay toward payment for a vehicle purchased from Payless Auto Sales. (*Id.*) Based on his estimate of overtime worked, Cassidy estimates that he is owed approximately $489.25 in unpaid overtime. (Doc. 41).

-8-

Pay records from Paychex reveal that Cassidy was paid $10.00 per hour and that his regular hours exceeded 40 once during his employment. (Doc. 41-5). On that single occasion when Cassidy's weekly hours exceeded 40, it was by a mere 30 minutes. (Doc. 41-5).

## James Dozier

Plaintiff Dozier worked as a clerical office worker for Defendant Payless Auto Sales from February 16, 2007 until March 13, 2008. (Doc. 41-12). According to Dozier, he performed clerical duties in the office from 9:00 a.m. until 8:00 p.m. six days a week for every week of his employment, for a total of 10.5 hours every week. (*Id.*) Dozier provides no testimony of his wage for performing clerical work. According to Defendants, Dozier was paid $350 per week for such clerical duties. (Doc. 43-1). The record in this case includes a single pay record evidencing a payment of $350 to Dozier at some point in 2008, but otherwise provides no date specific. (Doc. 41-5).

Aside from his office clerical work, Dozier also performed repossession work four days per week between the hours of 10:00 p.m. until either 3:00 a.m. or 4:00 a.m., for a total of approximately 20 hours every week. (Doc. 41-12). As previously noted, Dozier offers no testimony regarding his pay for any duties, including for his repossession work. Defendants provide no evidence in response to Dozier's testimony that he performed repossession work on top of his clerical duties, and Defendants also provide no evidence of pay for repossession work.

In total, Dozier testifies that he averaged approximately 43 hours of overtime per week for a total of approximately 83 hours of work per week for Defendants. (Doc. 41-12). In the Motion for Summary Judgment, Plaintiffs assert that Dozier was not only uncompensated for overtime, he did not even earn minimum wage. (Doc. 41).

Dozier argues that based on his estimated hours, and assuming he made minimum wage during the time of his employment, he is entitled to $6,390 in regular wages as a result of not being paid minimum wage. (*Id*.) Further, Dozier contends that, based on his estimated hours and assuming compensation at minimum wage, he is entitled to $10,134.00 in overtime pay. (*Id*.)

In response, Defendants simply contend that Dozier worked 40 hours per week and no more. Defendants assert that Dozier was paid $350 per week for those 40 hours, and he thus made $8.75 per hour.

### Hubert Palmer

Plaintiff Palmer began working for Paul's Auto Sales ("Paul's") in mid-2003, and throughout his employment, Palmer describes his duties as a "go-fer." According to Palmer, except for a period in which he worked a second job, he worked six days a week from 10 a.m. until 7 p.m (54 hours) and was paid $350 per week. (Doc. 41-14). During the time he worked a second job, Palmer worked for Paul's six days a week, three of which he worked from 10 a.m. until 7 p.m., and three other days from 10 a.m. until 4 p.m. (*Id*.) During this time, Dozier claims his pay was reduced to only $200 per week. (*Id*.) At certain, unspecified times during his employment, $50 was deducted from Palmer's pay

for a car purchased from Paul's. According to Palmer, based on his hours and rate of pay, not only was he not compensated for overtime hours, he was not receiving minimum wage. (Doc. 41).

Based on his average weekly work hours and the applicable minimum wage at the times worked, Palmer contends that his is owed $1,518 for unpaid wages as a result of not having been paid minimum wage in 2008, and $1,156.90 for 2006. (*Id.*) Palmer also contends that he is owed unpaid overtime of $820.98 from 2006, $2,132.41 from 2007, and $519.67 from 2008. (*Id.*)

Sukhvinder Singh, in his affidavit, testifies that Palmer worked only 20 hours per week throughout his employment until he quit on June 14, 2008. (Doc. 43-1). During that time, Sukhvinder Singh states that Palmer was paid $350 every two weeks, not weekly, for 20 hours per week ($8.75 per hour) until May 2006. (*Id.*) Thereafter, Palmer made $400 every two weeks for 20 hours of work each week ($10 per hour). (*Id.*) Pay records show bi-weekly payments of $400 to Palmer from April 2008 until June 2008. (Doc. 41-5). Those pay records, however, do not indicate the number of hours worked per pay period and do not reflect deductions for a car payment. (*Id.*)

### III. DEFENDANTS' MOTION TO STRIKE

As previously noted, Defendants move to strike two items relied upon by Plaintiffs in support of their Motion for Summary Judgment: (1) the records provided by Paychex (Doc. 41-5); and (2) Freeze's purported paystubs (Doc. 41-8). Defendants argue that both items are not properly authenticated pursuant to Fed. R. Evid. 901, which requires, "as a

-11-

condition precedent to admissibility[,]" evidence of "authentication or identification . . .

sufficient to support a finding that the matter in question is what its proponent claims."

### Pay Records

With regard to the Employee Earnings Records (Doc. 41-5), Defendant objects that

the declaration of Shannon Carter, submitted along with the records, generally "would be

insufficient to authenticate the accompanying records at trial" because it fails to otherwise

identify her and because it is not "notarized." (Doc. 45).

The Court notes that Carter's declaration appears to track the language of Fed. R.

Evid. 902(11),which generally refers to the self-authentication of "[c]ertified domestic

records of regularly conducted activity" and provides that:

> Extrinsic evidence of authenticity as a condition precedent to admissibility is
> not required with respect to . . . [t]he original or a duplicate of a domestic
> record of regularly conducted activity that would be admissible under Rule
> 803(6) if accompanied by a written declaration of its custodian or other
> qualified person, in a manner complying with any Act of Congress or rule
> prescribed by the Supreme Court pursuant to statutory authority, certifying
> that the record-
>
> (A) was made at or near the time of the occurrence of the matters set forth
> by, or from information transmitted by, a person with knowledge of those
> matters;
>
> (B) was kept in the course of the regularly conducted activity; and
>
> (C) was made by the regularly conducted activity as a regular practice.
>
> A party intending to offer a record into evidence under this paragraph must
> provide written notice of that intention to all adverse parties, and must make
> the record and declaration available for inspection sufficiently in advance of
> their offer into evidence to provide an adverse party with a fair opportunity
> to challenge them.

Fed. R. Evid. 902(11).

With regard to Defendants' first conclusory objection to the declaration regarding the identity of Carter, the Court notes that the declaration sets forth that Carter is "a duly authorized employee for" Paychex and holds the title of Client Services Supervisor. (Doc. 41-5). There being no more specific of an objection from Defendants regarding Carter's qualifications to attest to the records, such objection is overruled.

Next, with regard to Defendants' objection that the declaration is not "notarized," Defendants cite no authority for the proposition that such declaration must be notarized or otherwise sworn. In fact, there is no such requirement. *See Thomas v. Harvey*, 381 Fed.Appx. 542, 546 (6th Cir. 2010); *see also* 28 U.S.C. § 1746.

> Pursuant to 28 U.S.C. § 1746:
>
> [w]herever, under . . . any rule . . . any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same . . . such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury[.]"

Here, Carter's declaration is made under penalty of perjury, and it therefore "fulfill[s] the personal knowledge, admissibility, and competency requirements of Federal Rule of Civil Procedure 56(e) and otherwise [is] admissible in lieu of affidavits under 28 U.S.C. § 1746." *Thomas*, 381 Fed.Appx. at 546 (citing *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 475 (6th Cir.2002)).

Thus, Defendants' Motion to Strike in this regard is **DENIED**.

**Freeze Paycheck Stubs**

Defendants also object to the exhibit submitted in support of Plaintiffs' Motion for Summary Judgment purporting to be paycheck stubs of Jerry Freeze. (Doc. 41-8). Defendants contend that these pay check stubs lack proper authentication. (Doc. 45). Plaintiffs respond by arguing that they should be considered authenticated because they were produced in discovery. *See Churches of Christ in Christian Union v. Evangelical Benefit Trust*, No. C2-07-CV-1186, 2009 WL 2146095, at *5 (S.D. Ohio Jul. 15, 2009) (stating that "'[w]here a document is produced in discovery, "there [is] sufficient circumstantial evidence to support its authenticity' at trial") (citing *Denison v. Swaco Geolograph Co.*, 941 F.2d 1416, 1423 (10th Cir.1991)).

Here, Plaintiffs submitted the paycheck stubs to show Freeze's hourly rate of pay and to show that "the weekly hours Mr. Freeze worked often exceeded forty in a week." (Doc. 41). That information is corroborated and otherwise set forth in the records kept by Paychex. (Doc. 41-5). Accordingly, pursuant to Fed. R. Evid. 901, the Court finds that the payroll records are properly authenticated pursuant to Rule 901(b)(4), which illustrates that the authentication requirements are satisfied where "[d]istinctive characteristics and the like[,]" such as "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances" are "sufficient to support a finding that the matter in question is what its proponent claims." Fed. R. Evid. 901(a), (b)(4).

-14-

A review of all the records provided by Plaintiffs reveals that the paycheck stubs are what Plaintiffs claim. As a result, the Court finds that the paycheck stubs are appropriately authenticated under Fed. R. Evid. 901.

Accordingly, Defendants' Motion to Strike is **DENIED**.

### IV. PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

"Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Keweenaw Bay Indian Comm. v. Rising*, 477 F.3d 881, 886 (6th Cir. 2007) (quoting Fed. R. Civ. P. 56(c)). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment - rather, all facts must be viewed in the light most favorable to the non-moving party." *Id*. Once "a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must - by affidavits or as otherwise provided in this rule - set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

## FAIR LABOR STANDARDS ACT CLAIMS

Plaintiffs move for summary judgment on their claims under the FLSA. Pursuant to the FLSA, "employees may not be required to work more than forty hours per seven-day week without overtime compensation at a rate not less than one and one-half times their regular pay." *Wood v. Mid-America Management Corp.*, No. 1:04-cv-1633, 2005 WL 1668503, at *4 (N.D. Ohio Jul. 18, 2005) (citing *Elwell v. University Hospitals Home Care Services*, 276 F.3d 832, 837 (6th Cir.2002); 29 U.S.C. § 207(a)(1); *Bowers v. NOL, LLC*, 114 Fed.Appx. 739, 740 (6th Cir.2004)).

Further, an employer must pay each employee "who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce[,]" minimum wage. 29 U.S.C. § 206(a). For the time periods relevant to this case, minimum wage was $5.15 per hour until July 23, 2007. *See* Minimum Wage Increase Act of 1996, Pub.L. 104-188, § 2104(b), 110 Stat 1928-1929. Thereafter, between July 24, 2007 and July 23, 2008, minimum wage was $5.85 per hour. 29 U.S.C. § 206(b). Between July 24, 2008 and July 23, 2009, minimum wage was $6.55 per hour. *Id*.

An employee seeking unpaid overtime or unpaid minimum wage under the FLSA bears the "burden of proving that he performed work for which he was not properly compensated." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946). Because employers are chargeable with maintaining "proper records of wages, hours and other conditions and practices of employment" and are "in [the] position to know and to

-16-

produce the most probative facts concerning the nature and amount of work performed[,]" the Supreme Court has set forth a "proper and fair standard" in which an employee can "meet . . . his burden of proof." *Id.* at 687.

In a case where the employer fails to maintain adequate and accurate records, "an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id.* Thereafter, "[t]he burden . . . shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Id.* at 687-88. The employer's failure in this regard allows the court to "then award damages to the employee, even though the result be only approximate." *Id.* at 688.

Here, Defendants concede that they failed to keep adequate and accurate time records. (Doc. 43). Nevertheless, Plaintiffs are still required to prove that they "in fact performed work for which he was improperly compensated" and to produce "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Anderson*, 328 U.S. at 686-87.

All Plaintiffs submit estimates of time worked, some of which are corroborated in part, by pay records. Each Plaintiff, relying on the burden shifting framework in *Mt. Clemens Pottery*, 328 U.S. 680, asserts that they are entitled to summary judgment as a matter of law on their FLSA claims because Defendants admittedly failed to keep accurate or adequate records.

-17-

Recently, the Sixth Circuit discussed the burden shifting framework of *Mt. Clemens Pottery* in *O'Brien v. Ed Donnelly Enterprises, Inc.*, 575 F.3d 567, 602-03 (6th Cir. 2009), stating:

> To begin with, a "FLSA plaintiff must prove by a preponderance of evidence that he or she 'performed work for which he [or she] was not properly compensated.'" *Myers v. Copper Cellar Corp.*, 192 F.3d 546, 551 (6th Cir.1999) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946), superseded by statute on other grounds as stated in *Carter v. Panama Canal Co.*, 463 F.2d 1289, 1293 (D.C.Cir.1972)). *To determine the extent of damages*, the plaintiff can "prove his or her 'under-compensation' *damages* through discovery and analysis of the employer's code-mandated records. However, if the employer kept inaccurate or inadequate records, the plaintiff's *burden of proof is relaxed*, and, upon satisfaction of that relaxed burden, the onus shifts to the employer *to negate the employee's inferential damage estimate*." Id. (emphasis added) (citing *Mt. Clemens Pottery*, 328 U.S. at 687-88, 66 S.Ct. 1187).

*Id.* at 602. (Emphasis in original).

Thereafter, the Court noted the limitations of the burden shifting framework, finding it applicable only to relax the burden of proving of damages, not liability:

> *Mt. Clemens Pottery* and its progeny do not lessen the standard of proof for showing that a FLSA violation occurred. Rather, *Mt. Clemens Pottery* gives a FLSA plaintiff an easier way to show what his or her damages are. When an employer keeps inaccurate or inadequate records, for a FLSA plaintiff to show what his or her damages were, a FLSA plaintiff does not need to prove every minute of uncompensated work. Rather, she can estimate her damages, shifting the burden to the employer. If the employer cannot negate the estimate, then the "court may award damages to the employee, even though the result be only approximate." *Mt. Clemens Pottery*, 328 U.S. at 688, 66 S.Ct. 1187. In short, *Mt. Clemens Pottery* does not help plaintiffs show that there was a violation under the FLSA. It would only allow them to prove damages by way of estimate, if they had already established liability.

*Id.* at 602-03.

**John Bauer**

With regard to Bauer, the Court finds that issues of fact remain with regard to whether he performed overtime for which he was uncompensated, and further, an issue of fact remains with regard to Bauer's damage estimate. Bauer contends that throughout his employment, he consistently worked an average of 65 hours per week, which results in an average of 25 hours of overtime each week for which he was not paid. According to Bauer, not only was he not paid the overtime rate for those hours over 40, he was not paid at all. (Doc. 41-3).

Time records produced in support of each parties' position show that Bauer was compensated each week for exactly 40 hours. (Doc. 41-5). Notably, time records for other Plaintiffs, namely Freeze and Wilson, corroborate their estimates of overtime worked, and in the cases of Freeze and Wilson, exactly set forth the hours of overtime claimed.

There is, perhaps, an explanation for the discrepancies between Bauer's testimony and his time records reflecting only 40 hours of work per week. According to Bauer, he was never required to report his hours to his employer and there was no time-clock upon which he could do so at the auto lot. (Doc. 41-3). However, Bauer was required to log his use of tow trucks by marking the time out, the time in, the mileage out, and the milage in. (Doc. 43-2). According to Mukhtiar Singh, Sukhvinder Singh's father who oversaw use of the tow trucks, Bauer refused to log his times, and Mukhtiar Singh attempted to maintain the logs himself. (*Id.*) The logs showing Bauer's use of the truck do not

correspond with Bauer's estimates, and when viewed in a light most favorably to Defendants, reveal frequent use of the truck for eight hours or less per day.[5]  (*Id.*)

Defendants also produce the testimony of Bauer's former co-worker, James Gist, Jr., who worked full-time for Commercial Paper at the same time and alongside Bauer. (Doc. 43-4).  According to Gist, he and Bauer worked during the same hours and performed the same work duties.  (*Id.*)  Gist testifies that he too was always paid for exactly 40 hours worth of work per week, but rarely did he ever actually work a full 40 hours.  (*Id.*)

Further, there is a fact dispute regarding Bauer's pay for repossession work performed after the closing of the auto lot.  Bauer testifies that he was "wholly unpaid" for after hours repossession work.  (Doc. 41-3).  According to Sukhvinder Singh, Bauer was "paid a flat fee for each repossession."  (Doc. 43-1).  Defendants fail, however, to produce records corroborating the testimony of Sukhvinder Singh and evidencing such payments to Bauer.

In light of the foregoing, there are simply too many unanswered questions and credibility concerns to grant summary judgment with regard to liability on Bauer's FLSA claim.  Further, Defendants have produced some evidence rebutting Bauer's estimates, albeit not record "evidence of the precise amount of work performed," that tends to negate any "reasonableness of the inference" that could be drawn from Bauer's testimony.  *See Mt. Clemens Pottery*, 328 U.S. at 686-87.  In other words, the posture of the evidence,

---

[5]  The logs simply set forth a time without designating "a.m." or "p.m."

including credibility concerns, is such that genuine issues of material fact remain that are only appropriate for determination by the finder of fact.

Accordingly, Plaintiffs' Motion for Summary Judgment as to Bauer is **DENIED**.

### Jerry Freeze, Mark Wilson and Dustin Cassidy

Plaintiffs Freeze, Wilson and Cassidy were all employees of Payless Auto Salvage in 2008 and/or 2009. Defendants contend that Payless Auto Salvage cannot be liable under the FLSA because Freeze, Cassidy and Wilson were neither "engaged in commerce or in the production of goods for commerce" nor "employed in an enterprise engaged in commerce or in the production of goods for commerce" as required by 29 U.S.C. § 207(a)(1). Plaintiffs responds by arguing that Freeze, Cassidy and Wilson were all individually engaged in commerce. Further, Plaintiffs argue that all defendants and Paul's Auto Sales collectively constitute a single "enterprise" under the FLSA engaged in commerce.

Coverage under the overtime provision of the FLSA, *i.e.*, 29 U.S.C. § 207, applies only to employees "(1) 'engaged in commerce or in the production of goods for commerce' (individual coverage), or (2) 'employed in an enterprise engaged in commerce or in the production of goods for commerce' (enterprise coverage)." *Williams v. Hooah Sec. Services, LLC*, No. 09-2376-STA, 2010 WL 2632821, at *2 (W.D. Tenn. Jun. 28, 2010). The FLSA defines "commerce" as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b).

-21-

*Individual Coverage*

The Court first addresses whether individual coverage applies to Freeze, Cassidy and Wilson. "For individual coverage to apply under FLSA, an employee must present evidence that he was (1) engaged in commerce or (2) engaged in the production of goods for commerce." *McWilliams v. Dialog EMS, Inc.*, No. 1:06-cv-2001, 2007 WL 1725320, at *4 (N.D. Ohio Jun. 13, 2007); *Kowalski v. Kowalski Heat Treating, Co.*, 920 F. Supp. 799, 802-03 (N.D. Ohio 1996).

In this case, Freeze, Cassidy and Wilson all state that their job tasks encompassed reviewing parts orders from customers, retrieving and/or pulling those parts from junked cars at the salvage lot, marking each part taken, identifying the car from which the part was taken, and matching the part with the customer order. Further, each Plaintiff drained gasoline from junked cars and secured certain valuable parts in the salvage lot. Based on these tasks, Defendant concludes that Freeze, Cassidy and Wilson were not individually engaged in commerce or in the production of goods for commerce. Plaintiffs reach the opposite conclusion, apparently based on the fact that Plaintiffs' work involved automobiles and automobiles are "instrumentalities of interstate commerce."

However, simply because the work performed by Freeze, Cassidy and Wilson involved automobiles does not necessarily mean that they engaged in commerce or engaged in the production of goods for commerce. *See e.g. Navarro v. Broney Automotive Repairs, Inc.*, 314 Fed.Appx. 179, 180 (11th Cir. 2008) (holding that an employee "hired to collect motor parts . . . ordered by [the employer] . . . from local auto parts stores and to

-22-

use the parts to repair foreign and domestic vehicles" engaged in a "purely intrastate activity" and was not covered under the FLSA because the employee's "responsibilities 'merely affect[ed]' and did not implicate interstate commerce").

In fact, one court found that stripping used parts for resell at a salvage lot, absent any evidence that "the parts sold by defendant entered the channels of interstate commerce," did not constitute engaging in commerce under the FLSA.[6] *Mitchell v. Jaffee*, 156 F.Supp. 596 (N.D. Ala. 1957), rev'd in part on other grounds in *Mitchell v. Jaffee*, 261 F.2d 883 (5th Cir. 1958).[7]

Here, the evidence presented by Plaintiffs simply shows that Freeze, Cassidy and Wilson removed parts from junk vehicles to fill customer orders and also secured other valuable parts in the salvage yard. (Docs. 41-7, 41-9, 41-10, 41-11). Defendants state that these parts were sold to local repair shops mostly in the Miami Valley, or sold to walk-in customers at the salvage lot. (Doc. 43-1). Like similar activities in *Mitchell*, 156 F. Supp. 596, these tasks alone, without more, do not amount to "engaging in commerce" under the FLSA.

---

[6] In that case, "Plaintiff introduced evidence tending to show that automobile parts, consisting largely of motors, were sold to persons having an address outside of the State of Alabama" but there was no evidence "that any of the parts were ever transported by these persons with such addresses into other states[,]" and "there was no evidence from which it could be inferred that any of the parts sold by defendant entered the channels of interstate commerce." *Id*. at 597.

[7] On appeal, plaintiff in that case did not challenge the district court's finding that the mere stripping of parts from wrecked vehicles for intrastate resell did not constitute engaging in commerce. *Mitchell*, 261 F.3d at n1. However, the Fifth Circuit did find that the employees were engaged in the production of goods for commerce where the stripping of "usable and salable parts" was part of a process of preparing the wrecked vehicles into scrap metal which eventually used "as an ingredient in the manufacture of . . . [cast iron pipe], substantial portions of which are shipped outside the State[.]" *Id*. at 887-88. Here, however, there is no evidence that Freeze, Cassidy or Wilson did anything other than remove individual parts from cars, as needed, to fill the request of "local repair shops" or individuals.

*Enterprise Coverage*

Next, the Court considers whether Payless Auto Salvage is an "enterprise engaged in commerce." Pursuant to 29 U.S.C. § 203(s)(1), an "[e]nterprise engaged in commerce" is defined as "an enterprise that . . . has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated)[.]" There appears to be no dispute that Payless Auto Salvage's annual gross volume of sales in 2008 and 2009 were less than $500,000.

Nevertheless, Plaintiffs argue that the inquiry does not end at analyzing the annual gross volume of sales by Payless Auto Salvage alone because it was engaged in an enterprise with all of the other LLC Defendants and Paul's Auto Sales, and, therefore, all of these LLC entities comprise one "enterprise" and their combined annual sales is the necessary inquiry. As used within the FLSA, the term "enterprise" is defined as "the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all such activities whether performed in one or more establishments or by one or more corporate or other organizational units[.]" 29 U.S.C. § 203(r)(1).

In order to establish the existence of an "enterprise" between separate organizations or corporate units, the following must be established: "(1) related activities; (2) performed

-24-

through unified operations or common control; (3) for a common business purpose."
*Marshall v. Shan-An-Dan, Inc.*, 747 F.2d 1084, 1085-86 (6th Cir. 1984) (citing *Brennan v. Arnheim and Neely Co.*, 410 U.S. 512, 518 (1973); *Wirtz v. Columbian Mutual Life Ins. Co.*, 380 F.2d 903 (6th Cir.1967)). Here, Plaintiffs' arguments merely address the second element, *i.e.*, common control.

Even assuming Plaintiffs are correct in their assertion that "common control" exists, they point to no evidence establishing "related activities" or "common business purpose." *See Martinez v. ABL Enterprises II, Inc.*, No. 05-21276 Civ., 2005 WL 5560959, at *3-4 (S.D. Fla. Sept. 26, 2005) (finding no enterprise coverage where plaintiff failed to prove that an auto dealership and an auto repair business engaged in "related activities" or had a "common business purpose"); 29 C.F.R. § 779.206.

Payless Auto Salvage is undisputedly in the business of stripping used auto parts from junked vehicles and selling those parts to individuals who walk into the shop or to local repair shops. (Doc. 43-1). On the other hand, Payless Auto Sales and Paul's Auto Sales are both in the business of selling used cars. (Doc. 43-1). Based on these facts alone, it cannot be said that Payless Auto Salvage is engaged in related activities with the other LLC Defendants or Paul's Auto Sales, or that it has a common business purpose with those other entities. Accordingly, Plaintiffs have not shown that they were "employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 207(a)(1).

-25-

For the foregoing reasons, Plaintiffs Freeze, Wilson[8] and Cassidy[9] are not entitled to summary judgment on their FLSA claims. Therefore, the Motion with regard to Plaintiffs Freeze, Wilson and Cassidy is **DENIED**.

### James Dozier

Plaintiff Dozier claims that during his employment with Payless Auto Sales, he performed clerical work in the office between the hours of 9:00 a.m. until 8:00 p.m., six days a week, for approximately 10.5 hours per week. (Doc. 41-12). Dozier also contends that he worked four days a week performing repossession work after office hours for a total of 20 hours each week. (*Id.*) Based on these hours, Dozier estimates that he worked approximately 43 overtime hours per week every week of his employment. (Doc. 41-12).

Dozier provides absolutely no testimony of his pay. Instead, Plaintiffs submit a single time record evidencing a single payment of $350 at some point in 2008. (Doc. 41-5). Plaintiffs apparently request that the Court infer from this single payment record that Dozier was paid $350 each and every week of his employment for all of his estimated 83 hours. (Doc. 41). The Court simply cannot do so. Aside from the single record of

---

[8] Even assuming coverage under the FLSA, Wilson would not be entitled to summary judgment because genuine issues of fact remain regarding Wilson's claims. Wilson contends that he was required to record his time and his pay records do reflect hours worked beyond 40 in certain work weeks. His pay records reflect payment at his regular rate for these overtime hours. However, Wilson also testifies that at certain points in his employment, he was paid cash for work on Saturdays. Thus, even if summary judgment were appropriate with regard to liability for overtime pay, issues of fact would remain with regard to damages.

[9] Even assuming coverage under the FLSA, Cassidy would not be entitled to summary judgment because issues of fact remain regarding Cassidy's employment with Payless Salvage. Cassidy contends that he worked for Payless Salvage from March 2008 until August 2008. (Doc. 41-11). Sukhvinder Singh, however, testifies that Cassidy only worked from June 2008 until July 2008, when he was fired for stealing. (Doc. 43-1). Further, issues of fact remain as to whether Cassidy actually worked any overtime, and if so, how much overtime. While Cassidy estimates that he worked 46.5 hours per week, the pay records submitted by Plaintiff show that, between June and July 2008, Cassidy exceeded a 40 hour workweek once, by a mere 30 minutes. (Doc. 41-5).

payment to Dozier, the only other evidence in the record regarding Dozier's pay is testimony from Sukhvinder Singh that Dozier was paid $350 a week for 40 hours per week at a rate of $8.75 per hour. (Doc. 43-1). Sukhvinder Singh's affidavit addresses only Dozier's clerical work and makes no mention of Dozier's assertion that he performed repossession work in addition to his clerical duties.

Certainly, Defendants' failure to rebut Dozier's testimony regarding repossession work could leave the assertion that Dozier actually performed repossession work undisputed. However, because Singh's affidavit addresses only Dozier's clerical work, it is at least ambiguous on the issue of whether or not the $350 per week payment included the hours worked performing repossession work. At the summary judgment stage, the Court is required to view the evidence in a light most favorable to the non-moving party, here, Defendants. *Keweenaw Bay*, 477 F.3d at 886

Further, there is other evidence in the record, albeit with regard to Plaintiff Bauer, that payments for repossession work were made separately from other wages and were made on a flat fee basis per repossession. (Doc. 43-1). Absent any testimony from Dozier regarding his pay, and viewing the evidence actually presented in a light most favorable to Defendants, there is at least a genuine issue of fact remaining with regard to Dozier's pay for repossession work.

Further, with regard to Dozier's estimated weekly hours of clerical work, Defendants offer testimony stating that the office in which Dozier performed his duties was only open between the hours of 10:00 a.m. and 7:00 p.m., Monday through Friday, for

-27-

a total of 40 hours per week. (Docs. 43-1, 43-2). Further, Defendants submit testimony

rebutting Dozier's contention that hours worked on Saturday were in addition his five

workdays Monday through Friday. Evidence submitted by Defendants states that Dozier

only worked Saturdays to make-up for weekdays he did not work. (*Id.*)

Further, the Court finds that Dozier's conclusory estimated hours worked

performing clerical duties is insufficient to make a just and reasonable inference as to the

amount and extent of work he performed. Certainly, based on the rationale set forth in *Mt.*

*Clemens Pottery*, the lack of pay records regarding Dozier is chargeable to Defendants.

However, Dozier must still produce "sufficient evidence to show the amount and extent of

that work as a matter of just and reasonable inference." *Mt. Clemens Pottery*, 328 U.S. at

686-87.

Here, Dozier's estimates are merely based on blocks of time encompassing 83

hours every single week for over a year. There is no indicia whatsoever that Dozier

accounted for any variation from that schedule over that entire year, such as vacation,

personal days, holidays, sick days. Without specific testimony that Dozier took any

variations into account, or specific testimony that there were no variations, the Court

simply cannot accept such estimates as a matter of just and reasonable inference. *See*

*Barksdale v. E&M Transp., Inc.*, No. 3:10cv140, 2010 WL 4451790, at *3 (E.D. Va. Nov.

1, 2010) (finding that a plaintiff failed to meet his burden on summary judgment "of

producing sufficient evidence . . showing the amount and extent of overtime work" where

that plaintiff simply produced conclusory estimates lacking "independent or personal

-28-

verification of time actually worked on any particular week"such as "time off for vacation, illness or other that suggests . . . even a minimal personal attempt to lay a foundation for actual time worked").

Further, even if a just and reasonable inference could be made from Dozier's conclusory estimates of time worked as a clerical worker, Defendants do contest Dozier's estimates of hours worked as a clerical office worker, stating that Dozier only worked between 10:00 a.m. until 7:00 p.m. five days a week. Certainly, Dozier offers no description of work performed in the office the hour before it opened, or during the hour after it closed. Thus, there is a factual issue remaining as to the number of hours Dozier worked in the office per week performing his clerical duties, and Defendants have presented some evidence negating the reasonableness of any inference drawn from Dozier's testimony.

Therefore, issues of fact remain as to whether Dozier was paid for repossession work, and if so, how much. Further, issues of fact remain regarding the amount and extent of clerical work performed by Dozier. Accordingly, because issues of fact remain as to Dozier's pay for performing repossession work and the amount and extent of hours worked performing clerical work, Dozier's Motion for Summary Judgment is **DENIED**.

### Hubert Palmer

Plaintiff Palmer asserts minimum wage and overtime claims under the FLSA. Palmer began working for Paul's in mid-2003, and he worked for Paul's Auto Sales until June 2008. (Doc. 41-15). According to Palmer, except during periods where he worked

at a second job outside of Paul's, he worked six days a week from 10 a.m. until 7 p.m., for approximately 54 hours every week. (Doc. 41-14). When working a second job, Palmer estimates he worked approximately 45 hours per week. (*Id.*) Palmer contends that he was paid $350 per week in 2007, but only $200 per week at points in 2008. (Doc. 41-14). Palmer also testifies that $50 was sometimes deducted from his paycheck to be applied toward payment for a car he purchased at Paul's. (*Id.*)

Defendants submit testimony that Palmer worked only part-time for 20 hours per week throughout his employment until he quit on June 14, 2008. (Doc. 43-1). According to Defendants, during that time, Palmer was paid $350 bi-weekly, rather than weekly, for 20 hours per week ($8.75 per hour) until May 2006. (*Id.*) Thereafter, Palmer made $400 bi-weekly for 20 hours of work each week ($10 per hour). (*Id.*)

Pay records show bi-weekly payments of $400 to Palmer from April 2008 until June 2008. (Doc. 41-5). Those pay records, however, do not indicate the number of hours worked per pay period and also do not reflect any deductions for Palmer's car payment. (*Id.*) It is unclear from the evidence presented whether Palmer had a car payment during the time period for which pay records were produced, and if so, whether such deduction was made before the payment of $400 to Palmer.

Accordingly, even assuming Paul's Auto Sales and/or Rajvinder Singh, were properly made parties to this action, Defendants have submitted some evidence negating the reasonableness of any inference that can be drawn from Palmer's estimates. As a

-30-

result, genuine issues of fact remain with regard to the extent of hours worked by Palmer as well as Palmer's pay rate.

Summary judgment with regard to Palmer is, therefore, **DENIED**.

### SINGHS AS EMPLOYER UNDER THE FLSA

As part of their Motion for Summary Judgment, Plaintiffs contend that Sukhvinder Singh and Rajvinder Singh, in their individual capacities, are "employers" as defined by the FLSA, and thus, subject to individual liability. Under the FLSA, an "'[e]mployer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee[.]" 29 U.S.C. § 203(d). While Defendants, in their Answer to the Amended Complaint (Doc 37), generally denied Plaintiffs' allegations of individual liability, they do not contest Plaintiffs' Motion in this regard.

An individual, such as "a corporate officer with operation control[,]" can be deemed an "employer" under the FLSA along with the business entity itself. *Fegley v. Higgins*, 19 F.3d 1126, 1131 (6th Cir. 1994). To determine if an individual party is an "employer" under the FLSA, courts use an "economic reality" test. *Strange v. Wade*, No. 1:09-cv-316, 2010 WL 3522410, at * 3 (S.D. Ohio Sept. 8, 2010) (citing *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 965 (6th Cir.1991)). In making this determination, courts "focus upon the degree of an individual's 'operational control of significant aspects of the corporation's day to day functions . . . and who personally made decisions' regarding the corporation's direction." *Id.* (citations omitted). A significant factor to

-31-

consider is an individual's financial control over the subject business entity. *Id*.

First, as previously stated, Rajvinder Singh has not properly been made a party to this action and neither has Paul's Auto Sales, the business which Rajvinder Singh took over "day-to-day operation" in 2006. (Doc. 43-5). Accordingly, the Court makes no finding with regard to Rajvinder Singh's status as an "employer" under the FLSA.

With regard to Sukhvinder Singh, Plaintiffs alleged in the Amended Complaint that he is the sole member of the LLC Defendants and part owner of Paul's Auto Sales. (Doc. 35). The Amended Complaint further alleges that Sukhvinder Singh set and controlled payroll practices. (*Id*.) Defendants generally denied such allegations. (Doc. 37). Unfortunately, in support of their Motion for Summary Judgment, Plaintiffs present no evidence of the ownership structure of any of the LLC Defendants and provide the testimony of a single employee, Plaintiff Palmer, who testified that Sukhvinder Singh set his pay. (Doc. 41-14). Palmer, however, works for Paul's Auto Sales, which, as set forth above, has not been properly made a party to this action. Plaintiff Wilson did testify, however, that he was fired by Sukhvinder Singh. (Doc. 41-9).

Evidence in the record presently before the Court does establish that Sukhvinder Singh is the general manager of the LLC Defendants and co-general manager of Paul's Auto Sales.[10] (Doc. 43-1). Further, each Plaintiff testifies that Sukhvinder Singh was their immediate supervisor. Rajvinder Singh testified that he took over day-to-day operations of Paul's Auto Sales from Sukhvinder Singh in 2006. (Doc. 43-5). From such

---

[10] Testimony from Mukhtiar Singh, Sukhvinder Singh's father, is that during 2007, 2008 and 2009, Mukhtiar Singh was acting general manager of Payless Auto Sales, Commercial Paper and Paul's Auto Sales because Sukhvinder Singh devoted much of his time to Payless Auto Salvage. (Doc. 43-2).

testimony, it can reasonably be inferred that Sukhvinder Singh ran the day-to-day operations of the LLC Defendants. In fact, there is some direct testimony that Sukhvinder Singh set pay and terminated employees.

Notably, Defendants present no argument in response to Plaintiffs' Motion for Summary Judgment on the issue of whether Sukhvinder Singh is an "employer" under the FLSA. Because there is some evidence in the record presently before the Court that Sukhvinder Singh controlled the LLC Defendants, and because Defendants offer no opposition to such a finding on Summary Judgment, the Court grants Plaintiffs' Motion in this limited regard and finds that Sukhvinder Singh is an "employer" as defined by the FLSA.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment (Doc. 41) is **GRANTED** to the extent it seeks a finding that Defendant, Sukhvinder Singh is an "employer" under the FLSA; the Motion is **DENIED** in all other respects.  Defendants' Motion to Strike (Doc. 45) is **DENIED**.

**IT IS SO ORDERED**.

Date: ___12/7/10___          _Timothy S. Black_
                              Timothy S. Black
                              United States District Judge