UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| JOHN BAUER, *et al.*, | Case No. 3:09-cv-194 |
| Plaintiffs, | Judge Timothy S. Black |
| vs. | |
| SUKHVINDER SINGH, *et al.*, | |
| Defendants. | |

### FINDINGS OF FACTS AND CONCLUSIONS OF LAW

This civil case is before the Court for a decision following trial on January 31, 2011 and February 1, 2011. This case originally proceeded to trial before a jury on January 31, 2011, and following the close of evidence on that day, the Court recessed and the jury was dismissed for the day.

On February 1, 2011, the parties, by and through Counsel, waived their right to trial by jury on all issues and consented to withdraw the demands for the case to be determined by the jury. (Doc. 74). Instead, the parties consented to the case being finally determined by the Court. (*Id.*)

Pursuant to Federal Rule of Civil Procedure 52(a), the Court hereby makes its findings of facts and conclusions of law based upon the testimony of the witnesses, the exhibits admitted into evidence, and the undisputed facts agreed to by the parties on the record.

## I. BACKGROUND

This civil case presents claims for alleged unpaid overtime pay and minimum wage pay under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 210, *et seq*. The case proceeded to trial on the claims of three Plaintiffs, John Bauer, Hubert Palmer and James Dozier, against their former employers, Defendants Pay Less Auto Sales, LLC ("Pay Less Auto Sales"), Commercial Paper Co., LLC ("Commercial Paper"), Paul's Auto Sales, Inc. ("Paul's Auto Sales"), and Sukhvinder Singh, a/k/a "Sam" Singh.[1]

Pay Less Auto Sales and Paul's Auto Sales are in the business of used car sales. Commercial Paper was a business that financed automobiles purchased from Pay Less Auto Sales and Paul's Auto Sales. Commercial Paper is no longer an existing business entity. These business entities were all a part of a family business operated by Defendant Sam Singh, his two brothers, and his father. Sam Singh is the general manager of all the Defendant business entities. The parties agreed on the record that the term "Defendants" includes Pay Less Auto Sales, Paul's Auto Sales and Sam Singh.

## II. STIPULATED UNDISPUTED FACTS

JOHN BAUER: Plaintiff John Bauer was issued paychecks from Defendant Commercial Paper and was employed between January 2009 and March 22, 2009. During this time period, Plaintiff John Bauer was paid $550.00 for a 40 hour workweek. His hourly rate was $13.75 per hour. During John Bauer's employment, he was an employee engaged in commerce or in the production of goods for commerce or employed by an enterprise engaged in commerce or in the production of goods for commerce.

---

[1] The case originally included two other Defendants, Pay Less Auto Salvage ("Auto Salvage") and Rajvinder Singh, and three additional Plaintiffs, Jerry Freeze, Dustin Cassidy and Mark Wilson, who were all employees of Auto Salvage. However, before trial, the parties settled the claims asserted by Plaintiffs Freeze, Cassidy and Wilson, the Court approved the settlements, and the parties agreed to dismiss the claims of those Plaintiffs from this case, with the three remaining Plaintiffs, John Bauer, Hubert Palmer and James Dozier, proceeding only against the three "Defendants" - Pay Less Auto Sales, Paul's Auto Sales, and Sukhvinder Singh.

JAMES (MICHAEL) DOZIER: Plaintiff James (Michael) Dozier was employed by Pay Less Auto Sales from February 16, 2007 until March 13, 2008. James Dozier was paid $350.00 per week. During his employment, James Dozier was an employee engaged in commerce or in the production of goods for commerce or employed by an enterprise engaged in commerce or in the production of goods for commerce.

HUBERT PALMER: Hubert Palmer was an employee of Paul's Auto Sales. His claims in this case include the employment period beginning September 9, 2006 through the end of his employment on June 14, 2008. Hubert Palmer was an employee engaged in commerce or in the production of goods for commerce or employed by an enterprise engaged in commerce or in the production of goods for commerce.

PAUL'S AUTO SALES AND PAY LESS AUTO SALES: Paul's Auto Sales, Inc. and Pay Less Auto Sales were open from 10 a.m. to 7 p.m., Monday through Saturday.

### III. THE EVIDENCE

The following is a summary of the evidence presented by the parties at trial on January 31, 2011:

#### John Bauer

Until some point in 2008, Bauer operated his own towing business, a portion of which included performing repossession work for Defendants on a contract fee basis. While operating his own towing business, Bauer owned two tow trucks that he used to perform the repossession services. When performing repossession work for Defendants during the time he owned his own towing business, Bauer was paid a flat fee ranging between $150 and $300 per repossession.

In late 2008, under the stress of the economy, Bauer stopped operating his towing business, stopped insuring his tow trucks, and began performing work solely for Defendants using Defendants' tow trucks. By January 2009, Defendants placed Bauer on

the payroll at a weekly rate of $550 per week (or $13.75 per hour calculated on a 40 hour work week). According to Bauer, he worked for Paul's Auto Sales, Pay Less Auto Sales, Commercial Paper, Pay Less Auto Salvage, and Sam Singh. However, Bauer's paychecks were issued by Commercial Paper. Bauer continued in this employment capacity with Defendants until March 22, 2009.

During his employment with Defendants, it is undisputed that Bauer towed cars from auction sites, towed customer vehicles for service, towed customer vehicles that were in distress, and sometimes towed customer vehicles that had been impounded. Beyond these towing duties, Bauer contends that he also ran parts from the salvage yard to local body shops. Finally, and perhaps most disputed, Bauer contends that, as an employee of Defendants, he also performed hours of repossession work at Defendants' direction using Defendants' tow trucks with Defendants' knowledge.[2]

With regard to work hours, Bauer testified that, when entering into the employment relationship with Defendants, he believed that he would work from 8:00 a.m. until 5:00 p.m., Monday through Friday. However, Bauer contends that he actually worked six days a week, Monday through Saturday, and sometimes on Sunday. Further, Bauer contends that his workday seldom ended at 5:00 p.m. According to Bauer, he spent many hours after 5:00 p.m. towing junk cars from auction sites and also performing repossessions with Defendants' tow trucks until late at night or into the early morning. It is undisputed that Defendants failed to maintain adequate and accurate time records during Bauer's employment.

Bauer contends that there was no requirement for keeping his daily time.

---

[2] Testimony from several witnesses established that Defendants kept spare keys for cars they sold, and when a customer defaulted on payments, that spare key was sometimes retrieved from a file and used to repossess the vehicle.

-4-

However, for a couple weeks in March 2009, Bauer independently logged his hours worked. (Doc. 76-1).[3] Bauer's log reflects 75 total hours one week and 61 total hours another week. (*Id.*) In all, Bauer estimates that he worked an average of 65 total hours per week and was paid $550 for all hours.[4]

Sam Singh, however, disputes Bauer's testimony regarding his hours and contends that Bauer never performed any repossessions while an employee of Defendants. Instead, Sam Singh testified that Bauer worked from 10:00 a.m, when the lots opened, until 7:00 p.m., when the lots closed, for a total of not more than 40 hours per week.[5] Sam Singh testified that if Bauer performed any repossession work, he did so using his own equipment, on his own time, and was paid a flat-fee for each repossession. However, despite Sam Singh's repeated testimony regarding separate payments for repossessions, Defendants presented no documentary evidence of any kind evidencing any separate payment made to anyone (*e.g.*, 1099 tax forms, statements, invoices, *etc.*).

Sam Singh also testified that his tow trucks were never to be used by employees for performing repossessions. According to Sam Singh, his insurance company did not cover use of the tow trucks for repossession work, and, therefore, such work had to be performed by outside contractors or by employees performing such work on a independent contract basis. However, Sam Singh's testimony is contradicted by affidavit

---

[3] This document was admitted into evidence as Plaintiffs' Exhibit 1.

[4] It is undisputed that Bauer was paid at the rate of $13.75 per hour, which multiplied by 40 hours equals $550. Simply put, if the Court were to believe Bauer's testimony, not only was he not paid time-and-a-half for hours worked beyond 40 per week, he was not paid *any* wage for hours worked over 40.

[5] Defendants argued in closing that Bauer took a 30 minute meal break and two other 15 minute breaks each day. Defendants apparently argued that this hour block of "break time" should be uncompensated. However, there is no direct evidence that Bauer was required to take any breaks or that he actually took any breaks. Sam Singh simply testified that Bauer was free to take a break whenever he wanted. Moreover, pursuant to 29 C.F.R. §§ 785.18 and 785.19, while a "bona fine meal period" is not worktime, "[r]est periods of short duration, running from 5 minutes to about 20 minutes. . . are customarily paid for as working time" and "must be counted as hours worked."

testimony of his father, Mukhtiar Singh, who stated that Defendants' tow trucks were sometimes used to perform repossessions.

At odds with Bauer's testimony, however, is the testimony of James Gist, Jr., who testified that while he performed repossession work using Defendants' tow trucks, he did so on his own time without the knowledge of Defendants. Gist also testified that he was paid separately for repossession work. Gist testified that he made his own copies of the tow truck's keys without Defendants' knowledge. Bauer testified that he too possessed his own keys to Defendants' tow trucks.

## Hubert Palmer

Hubert Palmer contends that his relationship with Defendants began in approximately November 2003, when he began working at Paul's Auto Sales. In 2003, Palmer was introduced to Paul's Auto Sales through his cousin. Once Palmer's cousin left Defendants' employ, Palmer contends that he took over his cousin's position. Defendants dispute Palmer's contention that he began working for Defendants in 2003. However, in an affidavit previously filed with the Court, Sam Singh stated that Palmer was employed by Paul's Auto Sales beginning in 2003.

Palmer's main task while employed by Defendants was taking auto titles to the title office on Mondays. According to Palmer, this task would take two to three hours including driving and waiting times. Defendants offered testimony that running titles took considerably less time than that estimated by Palmer, approximately 40 minutes. According to Defendants, the running of titles simply required that Palmer take an envelope full of titles to the title office, drop the envelope off, and then return to the title office to pick up the processed titles when completed.

Aside from running titles on Monday, Palmer also occasionally made trips to the title office at other times when necessary. Palmer also washed cars, cleaned the lots, answered phones and retrieved parts from the salvage yard. There was no specific testimony regarding the length of time these tasks required. Palmer never worked on cars, tried to sell a car once, sometimes spoke to customers about purchasing a car, and sometimes used a computer. Palmer also testified that he sometimes assisted in repossession work, though he admitted that he did so at the request of John Bauer, not at the request of Defendants, and that Defendants did not know that he assisted with repossessions.

According to Palmer, he opened Paul's Auto Sales at 10:00 a.m. and worked until 7:00 or 8:00 p.m. Palmer testified that he worked this schedule six days a week for approximately 54 hours per week. Despite this inconsistent and seemingly less than burdensome workload, Palmer testified that he never had downtime at work and never took any breaks for lunch or otherwise. Palmer did state that he took two weeks of unpaid vacation per year. Palmer contends that at the beginning of his employment, he made $350 per week, and at some point thereafter, he made $400 per week.

For most of his employment, Palmer states he was paid in cash. Palmer also testified that in March or April 2008, he requested to be paid by paycheck. When Defendants started paying him by paycheck, he received bi-weekly paychecks for $400, *i.e.*, a purported 50% paycut. This cut in pay continued from approximately March 2008 until Palmer left Defendants' employ in June 2008. Incredibly, Palmer contends that he never noticed that his pay had been cut in half at the time.

According to Sam Singh, Palmer was always employed part-time, worked approximately 20 hours per week (or less), and was always paid $200 per week, *i.e.*, $10 an hour,

regardless of whether Palmer actually worked the entire 20 hours. Also, according to Sam Singh, Palmer was free to come and go as he pleased, and could take a break whenever he so chose.

### James (Michael) Dozier

James (Michael) Dozier began working for Pay Less Auto Sales in February 2007. According to Dozier, he did everything at the car lot, including opening the store, taking car payments, working on auto repairs, repossessing cars, towing cars, and selling cars. Dozier testified that he was paid $400 per week at $10 per hour, but the parties stipulated in the undisputed facts that Dozier was paid $350 per week.

Dozier contends that he opened the car lot at 10:00 a.m., six days a week, and each of those six days he also closed the lot at 7:00 p.m. Dozier testified that he never took a lunch break or any other break during the workday at anytime during his employment. Further, he never took a vacation during his employment and never took a sick day.

After closing the lot each day, Dozier contends that he would then perform four to five hours of repossession work four or five nights per week. In total, Dozier claims he worked a total of 74 hours every week, *i.e.*, 34 hours of overtime (54 hours on the lot and approximately 20 hours of repossession work).

Sam Singh agreed that Dozier worked at Pay Less Auto Sales from 10:00 a.m. until 7:00 p.m., but testified that Dozier only worked a total of four or five days a week. Sam Singh testified that Dozier would work some Saturdays, but only after having taken another day off during the week. Sam Singh also testified that Dozier was solely a salesman who performed no mechanical work, no title running, and only performed one repossession.

Sam Singh also disputed Dozier's testimony that he never took breaks during the

workday, stating that Dozier was free to come and go as he pleased, and that because the lot rarely had customers, there was ample opportunity for Dozier to take breaks at anytime. There was some conflicting testimony regarding the actual number of cars Dozier sold during his approximately 13 months of employment, with testimony that he sold anywhere from 83 to 128 during that time span (approximately 6-10 cars per month on average). According to Sam Singh, it should take no more than an hour to complete any given sale, giving Dozier plenty of free time to take breaks between the few cars sold per week.

Again, Defendants contend that Dozier never performed repossession work as an employee for them. Sam Singh testified that he could only recall one instance where Dozier actually repossessed a car, and that was from a friend in Kentucky using a key from Defendants' files. Sam Singh testified that Dozier was paid a separate fee for that repossession, but provided no documentary evidence showing that a separate fee was paid to Dozier for the repossession.

Sam Singh also testified that he did not believe that Dozier even possessed a valid drivers license during his employment, and contends therefore that Dozier could not have lawfully driven Defendants' tow trucks. However, there was no evidence beyond Sam Singh's "belief" that Dozier did not have a valid drivers license. Perhaps to the contrary, there was testimony that Dozier owned a car through one of Defendants' car lots.

## IV. FINDINGS OF FACT

### John Bauer

John Bauer worked for Defendants from January 1, 2009 until March 22, 2009, approximately 11 weeks. His hourly rate of pay was $13.75, and his overtime rate of pay, at time-and-a-half, would have been $20.63. Throughout Bauer's employment and the

employment of all Plaintiffs, Defendants failed to maintain adequate and accurate records of time worked.

With regard to whether Bauer performed uncompensated overtime, the Court finds that Bauer's normal hours were between 8:00 a.m. and 5:00 p.m, six days a week. Bauer never testified that he was precluded from taking a lunch break, and Sam Singh testified that Bauer was permitted to take breaks whenever he wanted. It is reasonable to infer that Bauer took some time between 8:00 a.m. and 5:00 p.m. to eat, and, therefore, the Court concludes, as a reasonable inference, that Bauer did take a 30 minute meal period each day.[6]

Nevertheless, between the hours of 8:00 a.m. and 5:00 p.m., the Court finds that Bauer worked 8.5 hours per day (with an uncompensated half-hour for a meal period), six days a week for a total 51 hours per week. The Court further finds that Bauer did perform repossession work at the direction and under the employ of Defendants between January 1, 2009, and March 22, 2009. Because there is no documentary evidence that Defendants made any separate payments to Bauer for repossession work (or that any separate payment was ever made to anyone), the Court concludes that repossession work was included in Bauer's weekly payment of $550. Further, the Court finds that, aside from repossession work, Bauer also sometimes towed salvage cars after 5:00 p.m.

After reviewing Bauer's handwritten time-log (Doc. 76-1), the Court concludes that Bauer performed an average of approximately 2.5 hours of work after 5:00 p.m., six days a week.

---

[6] Pursuant to 29 C.F.R. § 785.19, "[b]ona fide meal periods are not worktime. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be completely relieved from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period."

-10-

There is no dispute that Defendants failed to maintain adequate and accurate records of hours worked, therefore, Bauer meets his burden of proving the amount and extent of time worked as a matter of just and reasonable inference. Thus, Bauer worked approximately 15 hours of work per week after 5:00 p.m.

The Court finds that Bauer worked a total of 26 overtime hours per week for 11 weeks (a total of 286 overtime hours). Bauer is entitled to damages for these overtime hours despite the fact that his estimates of hours worked may only be approximate. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946). Because Defendants failed to pay Bauer anything beyond the first 40 hours every week, Bauer is entitled to $5,900.18 (286 total overtime hours multiplied by $20.63) in overtime pay from Defendants. The Court will address the issue of liquidated damages in its Conclusions of Law below.

### Hubert Palmer

Hubert Palmer worked as an employee of Defendants beginning in 2003. However, as stipulated by the parties, the extent of his claim is limited to the time period beginning September 9, 2006, until the end of his employment on June 14, 2008. The Court finds that Palmer's rate of pay was $200 a week, not $400, because Palmer's testimony that he worked approximately four to five months without ever recognizing that his pay was cut in half is simply not credible.

As admitted by Palmer, he never performed repossession work at the direction of Defendants or with Defendants' knowledge. Instead, Palmer testified that any repossession work he performed was at the request of John Bauer and without Defendants' knowledge.

-11-

Finally, Palmer failed to prove by a preponderance of the evidence that he worked more than 40 hours in any work week between September 9, 2006 and June 14, 2008. The only specific evidence of any task performed by Palmer was running titles to the title office on Mondays. Palmer generously estimated that this task took him two to three total hours to complete. There is simply a lack of evidence demonstrating that Palmer's other purported work tasks, *i.e.*, washing cars, cleaning car lots, answering phones and retrieving parts from the salvage yard, required more than an additional 37-plus hours per week. In fact, absent any specific and credible testimony about the nature of these additional tasks and the amount of time it took to complete them, the Court finds that Palmer was, in fact, only a part-time employee as asserted by Defendants.

Accordingly, Palmer failed to prove by a preponderance of the evidence that he worked overtime and has otherwise failed to produce sufficient evidence showing the amount and extent of work he performed as a matter of just and reasonable inference. Therefore, Defendants are entitled to a Judgment in their favor on Palmer's minimum wage and overtime pay claims.

### James Dozier

It is undisputed that James (Michael) Dozier was an employee of Defendants from February 16, 2007 until March 13, 2008, approximately 56 weeks. Throughout his employment, there is no dispute that Defendants failed to maintain adequate and accurate records of his time and pay.

Although Dozier testified that he was paid $400 a week, the parties stipulated that he was paid $350.00 per week ($8.75 per hour). At a regular rate of $8.75 per hour, Dozier's overtime rate would have been $13.13 per hour.

Dozier worked at the auto lots from 10:00 a.m. until 7:00 p.m. Dozier worked those hours six days a week. However, the Court finds Dozier's testimony that he never took lunch breaks or other breaks during the entirety of his 56 week employment not credible. Accordingly, the Court finds that Dozier worked on the lot from 10:00 a.m. until 7:00 p.m., six days a week, 8.5 hours a day, for a total of 51 hours per week.

With regard to Dozier's claim that he performed four to five hours of repossession work after 7:00 p.m., and that he performed such work four to five nights per week, the Court finds such testimony credible. While the Singhs testified at trial that Defendants' tow trucks were not used for repossessions, that testimony conflicts with an affidavit of Mukhtiar Singh, in which Mukhtiar Singh stated that Defendants tow trucks were sometimes used for repossessions. Accordingly, the Court finds that Dozier performed four hours of repossession work four nights per week after 7:00 p.m., for a total of 16 hours of repossession work per week.

Therefore, the Court finds that Dozier worked a total of 67 hours per week (27 hours of overtime per week) during his 56 weeks of employment for a total of 1,512 overtime hours. Dozier is entitled to damages for these overtime hours despite the fact that his estimates of hours worked may only be approximate. *Anderson*, 328 U.S. at 686-87. Because Defendants failed to pay Dozier any rate for these overtime hours, Dozier is entitled to $19,852.56 (1,512 total overtime hours multiplied by $13.13 per hour) in overtime pay from Defendants.

During closing argument, Dozier presented no argument regarding entitlement to minimum wage. Therefore, such claim has been abandoned. Accordingly, the Court will enter Judgment in favor of Defendants on Dozier's minimum wage claim.

## V. CONCLUSIONS OF LAW

### Liquidated Damages

Plaintiffs Bauer and Dozier are entitled to liquidated damages under the FLSA, which provides that:

> [a]ny employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.

29 U.S.C. § 216(b). The Sixth Circuit holds that "[l]iquidated damages under the FLSA 'are compensation, not a penalty or punishment.'" *Martin v. Indiana Michigan Power Co.*, 381 F.3d 574, 584 (6th Cir. 2004) (citing *Elwell v. Univ. Hosp. Home Care Serv.*, 276 F.3d 832, 840 (6th Cir.2002)).

Liquidated damages are mandatory unless "the employer shows to the satisfaction of the court that the act or omission giving rise to such action [*i.e.*, failure to pay overtime and/or minimum wage] was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the" FLSA. 29 U.S.C. § 260; *see also Martin*, 381 F.3d at 584. If the employer satisfactorily demonstrates the required showing under § 260, "the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title." *Id.* Here, the Defendants have failed to satisfactorily show "good faith" or "reasonable grounds for believing" that the failure to pay overtime was not a violation of the FLSA. Accordingly, Bauer and Dozier are entitled to the full extent of liquidated damages set forth in § 216(b).


### John Bauer

John Bauer was an employee of Defendants and was an employee engaged in commerce or in the production of goods for commerce or employed by an enterprise engaged in commerce or in the production of goods for commerce. Throughout his employment, Bauer performed overtime work for which he was not compensated by Defendants.

Further, Defendants failed to maintain adequate and accurate records of Bauer's time and Bauer has produced sufficient evidence demonstrating as a matter of just and reasonable inference that he worked approximately 286 hours of overtime for which he was not compensated. Defendants have failed to rebut the inference with credible evidence.

Therefore, Bauer is entitled to damages despite the fact that "the result be only approximate." *Anderson*, 328 U.S. at 686-87. Because Defendants failed to pay Bauer any wage for 286 overtime hours worked, Bauer is entitled to $5,900.18, plus liquidated damages, for a total of $11,800.36.

### Hubert Palmer

Hubert Palmer was an employee of Defendants and was an employee engaged in commerce or in the production of goods for commerce or employed by an enterprise engaged in commerce or in the production of goods for commerce. However, Palmer failed to prove by a preponderance of the evidence that he worked overtime and has otherwise failed to produce sufficient evidence showing the amount and extent of that work he performed as a matter of just and reasonable inference. Therefore, Defendants are entitled to a Judgment in their favor on Palmer's minimum wage and overtime pay claims.

### **James Dozier**

James (Michael) Dozier was an employee of Defendants and was an employee engaged in commerce or in the production of goods for commerce or employed by an enterprise engaged in commerce or in the production of goods for commerce. Throughout his employment, Dozier performed overtime work for which he was not compensated.

Further, Defendants failed to maintain adequate and accurate records of Dozier's time and Dozier has produced sufficient evidence demonstrating as a matter of just and reasonable inference that he worked approximately 1,512 hours of overtime for which he was not compensated. Defendants have failed to rebut the inference with credible evidence.

Therefore, Dozer is entitled to damages despite the fact that "the result be only approximate." *Anderson*, 328 U.S. at 686-87. Because Defendants failed to pay Dozier any wage for 1,512 overtime hours worked, Dozier is entitled to $19,852.56, plus liquidated damages for a total of $39,705.12.

During closing argument, Counsel for Dozier only argued Dozier's overtime pay claim and made no mention of Dozier's minimum wage claim. Accordingly, the Court deems that Dozier abandoned his claim for minimum wage. Therefore, Defendants are entitled to judgment on Dozier's minimum wage claims.

### **Attorney Fees**

Pursuant to the FLSA, "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). The Sixth Circuit holds that "[a]n award of attorney's fees under FLSA § 216(b) is mandatory, but the amount awarded is within the discretion of the District Court." *Farmer v. Ottawa County*, 211

F.3d 1268 (6th Cir. 2000) (citing *United Slate, Tile and Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 et al. v. G & M Roofing and Sheet Metal Co. Inc.*, 732 F.2d 495, 501, (6th Cir.1984)).

Prevailing Plaintiffs Bauer and Dozier are entitled to attorney's fees pursuant to § 216(b). Plaintiffs shall submit a motion for costs and attorney's fees, along with supporting affidavits and evidentiary materials as set forth in Fed. R. Civ. P. 54(d). Plaintiffs' motion shall be filed within 14 days after the entry of these Findings of Fact and Conclusions of Law. Defendants shall respond to Plaintiffs' motion within 14 days after entry of these Findings of Fact and Conclusions of Law, and Plaintiffs may timely reply.

## VI. CONCLUSION

For the foregoing reasons, the Court finds that:

(1) Plaintiff John Bauer is entitled to judgment against Defendants on his overtime claim in the total amount of **$11,800.36** (including liquidated damages).

(2) Plaintiff James (Michael) Dozier is entitled to judgment against Defendants on his overtime claim in the amount of **$39,705.12** (including liquidated damages). Defendants are entitled to judgment on Dozier's minimum wage claim.

(3) Defendants are entitled to judgment against Plaintiff Hubert Palmer on his minimum wage and overtime claims; and

(4) Plaintiffs Bauer and Dozier are entitled to reasonable attorney's fees and costs of the action from Defendants. Plaintiffs shall submit a motion for costs and attorney's fees, along with supporting affidavits and evidentiary materials, as set forth in Fed. R. Civ. P. 54(d). Plaintiffs' motion shall be filed within 14 days after the entry of these Findings of Fact and Conclusions of Law. Defendants shall respond to Plaintiffs' motion within 14 days, and Plaintiffs may timely reply

**IT IS SO ORDERED.**

Date: 2/14/11

*Timothy S. Black*
Timothy S. Black
United States District Judge